IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Crim. No. 96-114-12 (RBK) |
| v. | : **OPINION** |
| FELIX ROCHE, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Defendant Felix Roche's Motion for Reduction of Sentence and Compassionate Release under the First Step Act ("Motion") (ECF No. 687). For the reasons set forth below, Roche's Motion is **DENIED**.

**I.      BACKGROUND**

On November 7, 1996, a jury convicted Roche of RICO conspiracy, substantive RICO offenses for assisting in the murder of a police informant, and conspiracy to distribute heroin. (ECF No. 690, Response in Opposition, "Govt. Opp'n" at 1–2). On March 18, 1997, the trial court sentenced Roche to life in prison. (*Id.* at 2). The Third Circuit affirmed his conviction and sentence. (*Id.*)

On May 10, 2021, Roche filed this Motion for Reduction of Sentence and Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on his risk of severe illness from COVID-19 due to his diabetes and glaucoma. (Motion at 3–4); (Govt. Opp'n at 3). Roche filed a supplemental brief to his initial motion on November 11, 2021 (ECF No. 700, "Suppl. Br."). The United States opposes Roche's request. (*See generally* "Govt. Opp'n").

1

At the time of initial filing, Roche was an inmate in federal custody at United States Penitentiary Lee. (Motion, ECF No. 687 at 8). He is now an inmate at Federal Correctional Institution Schuylkill ("FCI Schuylkill"). (ECF No. 688, 696).

## II.   LEGAL STANDARD

Section 3582(c)(1)(A), as amended by Section 603(b) of the First Step Act, provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The changes implemented by the First Step Act's amendment allow prisoners to directly petition the court, as opposed to the Bureau of Prisons ("BOP"), for a reduction in sentence under 18 U.S.C. § 3852(c)(1)(A)(i) provided, however, they satisfy the exhaustion requirements first. *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396 (E.D. Pa. 2020).

As such, the first step for a defendant in a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) is to exhaust any available administrative remedies. *United States v. Babbitt*, 496 F. Supp. 3d 903, 907 (E.D. Pa. 2020). To exhaust administrative remedies, a defendant must first present his request for compassionate release to the warden. *United States v. Raia*, 954 F.3d 594, 595–96 (3d Cir. 2020). Thirty days after submitting the request or after

receipt of an adverse decision, whichever is earlier, the defendant may move for compassionate release in the district court. *Id.*; *Babbitt*, 496 F. Supp. 3d at 907. At the second step, a defendant must show that "(1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Rivera*, No. CR 06-849 (NLH), 2022 WL 1284717, at *1 (D.N.J. Apr. 29, 2022) (*quoting United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

"Extraordinary and compelling reasons" are not defined by statute. Rather, Congress tasked the United States Sentencing Commission with providing a definition. Congress's only instruction to the Commission was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The Commission provided such a definition in U.S.S.G. § 1B1.13 cmt. n.1(A)–(D). There, the Commission explained that extraordinary and compelling reasons exist where there is:

> (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances: (i) death/incapacitation of the only caregiver for the inmate's children or (ii) incapacitation of an inmate's spouse, if the inmate is the spouse's only caregiver.

U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). In subsection (D) of the Application Note to U.S.S.G. § 1B1.13, there is a catchall provision that gives the Director of the BOP the authority to determine if "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other three categories. *Id.* cmt. n.1(D). The definition of "extraordinary and compelling reasons" has not been updated since the First Step Act's enactment.

3

The Third Circuit recently held that Section 1B1.13's definition of "extraordinary and compelling reasons" does not bind courts when considering prisoner-initiated motions. *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021), *cert. denied*, 142 S. Ct. 1446 (2022). Nonetheless, Section 1B1.13 "still sheds light on the meaning of extraordinary and compelling reasons" and can provide a useful guide for courts considering compassionate release motions. *Id.* at 260 ("[T]he District Court did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'").

## III. DISCUSSION

The Court notes two points at the outset. First, Roche spends a significant part of his motion attacking the validity of his sentence and conviction and arguing that it is unconstitutional. (Motion at 1–3, 6–8). The Court declines to consider those arguments as "[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity." *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019); *United States v. McLean*, No. 21-2301, 2021 WL 5896527, at *2 (3d Cir. Dec. 14, 2021).

Second, the parties dispute whether Roche satisfied step one—whether Roche exhausted his administrative remedies. (Motion at 6); (Govt. Opp'n at 3). Because the Court denies this Motion for other reasons, for the purposes of this Motion, the Court will assume Roche exhausted his administrative remedies.

### A. Extraordinary and Compelling Reasons

Roche asserts that the COVID-19 pandemic, combined with his diabetes and glaucoma, constitute extraordinary and compelling circumstances warranting compassionate release. (Motion at 3-4). Although he is fully vaccinated, Roche claims that FCI Schuylkill has failed to

4

administer him a COVID-19 booster shot, and, therefore, he is not adequately protected from infection. (Suppl. Br. at 2).

The mere "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner[.]" *United States v. Roeder*, 807 Fed. App'x 157, 161 n.16 (3d Cir. 2020). Most defendants who successfully move for compassionate release related to COVID-19 through § 3582(c)(1)(A) demonstrate that: (1) they are particularly vulnerable to developing severe illness from COVID-19 due to age or a medical condition(s); and (2) there is "an actual, non-speculative risk of exposure to COVID-19 in the facility where [they are] held." *United States v. Somerville*, 463 F. Supp. 3d 585, 597–98 (W.D. Pa. 2020).

Roche has failed to show that he faces an actual, non-speculative risk of exposure to COVID-19 at FCI Schuylkill. There are currently no active cases among the inmates at FCI Schuylkill and only three cases among staff members. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 19, 2022). Since the vaccine became available, FCI Schuylkill has fully vaccinated 1,214 total inmates. *Id.* For reference, FCI Schuykill currently houses 1,137 inmates. *FCI Schuylkill*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/sch/ (last visited Oct. 19, 2022). Additionally, FCI Schuykill has fully vaccinated 169 staff members, and that number does not include any staff who may have received their vaccine in the community, rather than a BOP facility. *Id.*

The vaccination of inmates and staff greatly reduces the risk of COVID-19 exposure and infection within the facility. *See United States v. Martinez*, No. CR 16-503 (KM), 2022 WL 1320618, at *4 (D.N.J. May 2, 2022) ("The likelihood of a COVID-19 infection has also been greatly reduced by vaccination of [the defendant] and others at the prison."). There have been no

COVID related inmate or staff deaths at FCI Schuylkill since the beginning of the pandemic. *Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 19, 2022). Roche himself is fully vaccinated against COVID-19. (Suppl. Br. at 2).

Roche argues that the risks he faces from COVID-19 because of his diabetes and glaucoma are so extraordinary and compelling that they justify compassionate release. Roche is correct that his diabetes puts him at risk of suffering severe illness if infected with COVID-19. (Motion at 3); (Suppl. Br. at 1); *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 19, 2022). His glaucoma, however, does not. *See id.* Further, merely having a CDC identified medical condition that increases a person's risk for severe COVID-19 illness—such as diabetes—is insufficient to in and of itself justify early release. *United States v. Hicks*, No. 20-3512, 2021 U.S. App. LEXIS 28834, at 2 (3d Cir. Sep. 23, 2021).

Prior to vaccine availability, the COVID-19 health risk from diabetes had, in some cases, been found to be an extraordinary and compelling reason justifying compassionate release. *See United States v. Stiver*, No. 17-64, 2021 U.S. Dist. LEXIS 54280 (W.D. Pa. Mar. 23, 2021). Since COVID-19 vaccines have become available, however, and where defendants, like Roche, are vaccinated, courts have consistently found that the risk from COVID-19 to diabetics has been mitigated such that extraordinary and compelling reasons do not exist to warrant early release. *United States v. McAdams*, No. 09-737 (NLH), 2022 U.S. Dist. LEXIS 107474, at 4 (D.N.J. June 16, 2022); *See United States v. Hoffman*, No. 21-2452, 2022 U.S. App. LEXIS 7480, at 1–3 (3d Cir. Mar. 22, 2022); *United States v. Shumate*, No. 18-0645 (NLH), 2021 U.S. Dist. LEXIS 108779 (D.N.J. June 9, 2021). Given that Roche is fully vaccinated against COVID-19, he is

6

substantially protected from COVID-19 infection and, in the case of breakthrough illness, from severe symptoms. *See United States v. Williams*, No. CR 11-00421-SDW-1, 2022 WL 950994, at *2 (D.N.J. Mar. 29, 2022) ("If a defendant is vaccinated, many courts have found that there is an insignificant likelihood that the defendant 'will contract COVID-19 and become seriously ill.'") (collecting cases); *United States v. Ackerman*, Crim. No. 11-740-KSM-1, 2022 WL 1214172, at *4 (E.D. Pa. April 25, 2022) (collecting cases). Therefore, Roche's diabetes is not an extraordinary and compelling reason to grant his early release.

Roche argues that COVID-19 variants put him at severe risk because he has not received a booster shot as of his reply briefing. (Suppl. Br. at 1–2). He claims the CDC's recommendation that individuals receive a booster shot six months after becoming fully vaccinated is necessary to protect against COVID-19 variants, and without a booster, the same diabetic risks apply. (*Id.*) Roche received his second Moderna shot on March 1, 2021. *Id.* at 2. The Court therefore considers him fully vaccinated. Roche argues this means he should have received a booster shot on September 1, 2021, in accordance with the six-month recommendation. (*Id.* at 2). Thus, he contends the risk he has been under since September 1, 2021 constitutes an extraordinary and compelling reason warranting early release. (*Id.*).

The CDC does recommend a booster shot within six months of becoming fully vaccinated, in part for protection against COVID-19 variants. *COVID-19 Vaccines for People Moderately or Severely Immunocompromised*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/immuno.html (last visited Oct. 19, 2022). Alleviating this concern, though, the Bureau of Prisons announced its plan to promptly offer a booster vaccine to all inmates a few weeks prior to Roche's supplemental briefing. *United States v. Traumann*, No. 18-564, 2021 U.S. Dist. LEXIS 212900, at *5 (E.D. Pa.

Nov. 3, 2021) (citing *COVID-19 Vaccine Guidance 6*, Fed. Bureau of Prisons (Oct. 13, 2021), https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v14_0_2021.pdf). On February 25, 2022, the Bureau of Prisons announced that any inmate eligible for a booster may receive one. *COVID-19 Vaccine Guidance 6*, at 1, 21, https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v17.pdf. For the immunocompromised, this amount of time was shortened to three months. *Id.* Although the Court does not know for certain whether Roche has received a booster shot in the intervening time, it has been available to him for a while now.

   The Court does not seek to diminish Roche's concern for his health or the seriousness of the COVID-19 pandemic for those in custody. Still, Roche has not shown that his circumstances warrant release. He has failed to show that he is at a uniquely high risk for grave illness from COVID-19 given his vaccination status and the availability of boosters, nor has he proven that there currently exists an actual, non-speculative risk of exposure at FCI Schuylkill given its high vaccination rate and low incidence of COVID-19 within the facility. Although the Court understands his concern related to booster shots and COVID-19 variants, a plan has been in place to administer booster shots for roughly eight months. Thus, the Court finds there are not extraordinary and compelling reasons to justify Roche's early release.

   **B.**  **Section 3553(a) Factors**

   An analysis of the Section 3553(a) factors further supports the denial of Roche's request for release. In considering whether to reduce a defendant's sentence, a court must look to the factors contained in 18 U.S.C. § 3553(a). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>  (B) to afford adequate deterrence to criminal conduct;

8

> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

Roche offers no argument as to how the factors weigh in his favor. Although he does cite to several cases where courts sentenced individuals to life imprisonment on murder charges, then later granted those individuals compassionate release, Roche does not explain if he meant these cases to support an argument that the § 3553(a) factors weigh in favor of release, or, if they do, how that might be so. (Suppl. Br. at 2–3). In contrast, the United States argues that the factors weigh against release because Roche continues to present a danger to the community, because he may be at greater risk of contracting COVID-19 if released, and in light of the particularly vicious nature of his crime, wherein he took part in a police informant's murder to protect his drug distribution enterprise. (Govt. Opp'n at 21–22).

Although the Court commends Roche for taking some positive steps during his incarceration, (*see* Motion at 4), the Court agrees with the United States that the § 3553(a) factors weigh against release. The nature and circumstances of Roche's crime counsel against his early release. The Court is also mindful of the need for the sentence imposed to protect the public from future violence and to afford adequate deterrence. Moreover, the Court believes that the present sentence is needed to provide just punishment and specific deterrence to Roche. Accordingly, the Court finds that the § 3553(a) factors weigh against Roche's release.

## IV. CONCLUSION

For the reasons expressed above, Roche's Motion (ECF No. 687) is **DENIED**. Roche's request for counsel is **DENIED as moot**. An appropriate order follows.

Dated: October 20, 2022                                         /s/ Robert B. Kugler
                                                                ROBERT B. KUGLER
                                                                United States District Judge